In re Melvin DUDLEY, Sr., Gwendolyn Dudley, Debtors.

In re Sean Kevin Mashburn, Staci Dawn Mashburn, Debtors.

In re Roberto Martinez, Gwendolyn Dudley, Debtors.

In re James Johnson, Avelina Johnson, Debtors.

In re Alberto Gonzales, Jesusa Gonzales, Debtors.

In re Tresa Gayle Keel, Debtor.

In re Irma Reyna Sanchez, Debtor.

In re Daniel Todd, Debtor.

In re Robert Williams, Jr., Dora Williams, Debtors.

In re Danny Metsgar, Cynthia Metsgar, Debtors.

In re Mario Louis Aguilar, Debtor.

In re Tommie Ann Shannon, Debtor.

In re Debra Burks Ray, Debtor.

Bankruptcy Nos. 98–10221–7, 98–20411–7, 97–51388–7, 98–50068–7, 98–50128–7, 98–50347–7, 98–50414–7, 98–50438–7, 98–50491–7, 98–50509–7, 98–50511–7, 98–50556–7 and 98–50562–7.

United States Bankruptcy Court, N.D. Texas, Abilene Division.

Feb. 23, 1999.

Leon A. Thurman, Thurman & Nix, Abilene, TX, for Debtor.

Harvey Morton, Lubbock, TX, trustee.

Deborah Williamson, Cox & Smith, San Antonio, TX, for Sears.

## MEMORANDUM OF OPINION ON MOTIONS TO REOPEN CASES

JOHN C. AKARD, Bankruptcy Judge.

Sears, Roebuck and Co. (Sears) filed a motion to reopen in each of the captioned cases. The court finds that Sears has not shown cause for reopening the cases. Thus, the motions must be denied.[1]

### STATUTE

Reopening bankruptcy cases is governed by § 350(b) of the Bankruptcy Code[2] which reads as follows:

(b) A case may be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor, or for other cause.

The reopenings requested by Sears are neither to administer assets nor to accord relief to the Debtors. Consequently, Sears must establish that it has "cause" for reopening these cases.

### DISCUSSION

The *Dudley* case was filed in the Abilene Division of the Northern District of Texas. The court heard Sears' motion to reopen in Abilene so that the Debtors and their attorney could be present. The *Mashburn* case was filed in the Amarillo Division. The court heard Sears' motion to reopen in Amarillo so that the Debtors and their attorney could be present. The remaining cases were filed in the Lubbock Division and those Debtors were all represented by the law firm of Tarbox & Miller. The parties agreed that the issues in all the Lubbock cases were the same. Consequently, the court held a consolidated hearing on all of them.

Basically, the same series of events transpired in each of the cases. When the Debtors filed for relief under Chapter 7 of the Bankruptcy Code, the Clerk sent a notice of commencement of the case to all creditors and parties in interest, including Sears. Each of the notices conspicuously stated the date, time, and place set for the discharge and reaffirmation hearing. Additionally, the notice gave the date, time, and place of the meeting of creditors held pursuant to § 341 of the Bankruptcy Code. A representative of Sears attended the meetings of creditors. At those meetings, the Trustee announced the date, time, and place of the discharge and reaffirmation hearing. Either during the meeting of creditors or immediately thereafter, the Sears representative requested that the Debtors reaffirm their respective debts to Sears.[3]

Under § 524(c)(3), Debtors' attorneys are obligated to counsel with their clients concerning reaffirmation agreements and to sign

---

1. This court has jurisdiction of this matter under 28 U.S.C. § 1334(a), 28 U.S.C. § 157(a), and Miscellaneous Rule No. 33 of the Northern District of Texas contained in Order of Reference of Bankruptcy Cases and Proceedings *Nunc Pro Tunc* dated August 3, 1984. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(1), (b)(2)(A).

2. The Bankruptcy Code is 11 U.S.C. § 101 *et seq.* References to section numbers are references to sections in the Bankruptcy Code.

3. Sears asserted that in several of the cases, it did not request a reaffirmation agreement, but instead sent an "inquiry" as to whether the debtor wished to reaffirm the debt. Regardless of what Sears chooses to call its communications to the Debtors' attorneys, their obvious purpose was to secure a reaffirmation. The Debtors' attorneys are legitimately concerned about such requests because Sears sales tickets include a security agreement. *In re Hardage*, 99 B.R. 738 (Bankr.N.D.Tex.1989).

a certificate with respect to all reaffirmation agreements which are presented to the court. These attorneys thought that it was not in their clients' best interest to reaffirm an unsecured debt. Consequently, they requested Sears to furnish proof that it had a security interest in property belonging to the Debtors.[4] Sears' credit office representative, who testified at the hearings on these matters, acknowledged that the credit office received reports from the representatives who attended the meetings of creditors. In most cases, the credit office wrote to the attorney requesting a reaffirmation agreement. However, Sears neither furnished the attorney with any documents reflecting that Sears had a security interest in any property belonging to the Debtors, nor did Sears certify to the Debtors' attorneys that Sears was not claiming a security interest in any property of the Debtors. In most instances the Debtors' attorneys, or someone in their office, contacted Sears requesting security documents. Sears did not respond.

No Sears representative attended the discharge and reaffirmation hearing in any of these cases. The Debtors' attorneys requested this court to deny Sears' request for a reaffirmation agreement, find Sears' claim to be unsecured, and enjoin Sears from interfering with the Debtors in the possession of their property with respect to any pre-bankruptcy debt.[5] The court granted the Debtors' requests. The Clerk mailed a copy of the court's orders to Sears and to other appropriate parties. In each case, the court granted Sears 30 days from the entry of the order to file a motion for rehearing. Sears did not file a motion for rehearing in any of the cases. Subsequently, the cases were closed.

The cases were closed at different times. On November 9, 1998, more than a month after all of them were closed, Sears filed a motion to reopen them in order to request the court to set aside its order with respect to the proposed reaffirmations. At the hearing on the *Dudley* and *Mashburn* cases, Sears did not introduce any documents to establish that it had a security interest in any of the Debtors' property. Neither its witness nor its counsel affirmatively stated that Sears had, or did not have, a security interest in the Debtors' property.

At the consolidated hearing in Lubbock, Sears asserted that it had a security interest in a television set belonging to Debtor Irma Reyna Sanchez. However, Sears failed to introduce any documentary evidence to support its assertion. The court cannot find that Sears has a security interest in property unless Sears furnishes documentation to establish that security interest. Consequently, the court must find that Sears' claim against Ms. Sanchez is unsecured. In the remaining Lubbock cases Sears acknowledged, for the first time, that its claim against those Debtors was unsecured.

## CONCLUSION

Sears did not demonstrate that it holds a security interest in any property belonging to any of the Debtors who are the subjects of this proceeding. Since Sears' claims against these Debtors are unsecured, Sears has not been injured in any way by this court's order finding it unsecured and enjoining it from interfering with the Debtors in their possession of their property with respect to pre-bankruptcy debts. Since Sears has not shown cause for reopening these cases, Sears' motions to reopen must be denied.

ORDER ACCORDINGLY.[6]

---

4. The Debtors' attorneys requested the same information Sears would have been required to furnish had it filed a claim in the case. Fed. R.Bankr.P. 3001(d). In many instances, Sears furnishes that proof and the attorneys approve reaffirmation agreements with Sears which are filed with the court.

5. Attorneys are concerned that creditors will contact their clients post-discharge asserting a lien on property belonging to the Debtor. Caroline E. Mayer, *Night of the Living Debt*. THE WASHINGTON POST, September 13, 1998, at H1. Debtors' attorneys are also concerned that creditors will engage in illegal post-bankruptcy debt collection. *Sears to Plead Guilty in Debt Collection Case*, THE DALLAS MORNING NEWS, February 10, 1999, at D2.

6. This Memorandum shall constitute Findings of Fact and Conclusions of Law pursuant to FED. R.BANKR.P. 7052 which is made applicable to Contested Matters by FED.R.BANKR.P. 9014. This Memorandum will be published.